Good morning. Sean Kajian for the Appellant Defendant. Mr. Cedano, I'd like to reserve two minutes for rebuttal. Mr. Cedano's brings to counts 1, 3, and 5 should be reversed because his conduct was entirely domestic. He picked up the aliens within the United States. He transported them within the United States. This Court, sitting en banc, confirmed that entirely domestic conduct is not aiding and abetting the bringing to of aliens within the United States. Are you referring to Lopez? Yes, Your Honor. Wasn't that a little different in that the driver in Lopez was a last minute replacement and there was evidence that there was no involvement prior to the aliens coming into the country? Isn't that a little different? Well, not so much. First off, I don't think the last minute replacement makes much of a difference. But in Lopez, there was evidence. Well, it makes a difference because it infers, or one could infer, that there was no involvement before the domestic portion of the transaction began. So that's why that's important, because it confirms that it was totally a domestic proposition. Although in Lopez, Ms. Lopez, there was evidence that she had conduct with Jose, which is the potentially the Trent we guide in that case. And further, Ms. Lopez changed her name, changed the registration of her car into her name. So it's certainly within the same sort of, the same line of thinking as Your Honor has, which is there's evidence of planning before Ms. Lopez got involved. I think the language in Lopez that I think is pivotal is the fact that it says the initial transporter had completed his portion of the trip before Ms. Lopez became engaged. And in this case, the initial transporter continued with the cargo. It's an interesting point, and I recognize that. In this case, the guide brought the aliens to the United States. And I think the way Lopez reads, which is that they've completely rejected, the Ninth Circuit sitting on the mark has rejected the ultimate destination test. And the only thing to look at is has the guide completed his task, which is bringing the aliens within the United States. And that's what happened here. The guide brought the aliens to the United States. In fact, some of the aliens fell asleep within the United States for so long. What's the exact language that we used in Lopez? Pardon? What's the exact language that we used in Lopez on that point? The mere act of picking up aliens. Excuse me, can you tell us what page you're reading from? Oh, sorry. Lopez at 1199-1100. I'm relying on the mere act of picking up aliens at a location near the border and transporting them within the United States is not sufficient to support a conviction for aiding and abetting a brings to offense. What do you do with the language on page 1188 that says, the crime of bringing an alien to the United States does not terminate until the initial transporter who brings the aliens to the United States ceases to transport them? I agree. I agree with that language. And what about the language that says, the defendant transported undocumented aliens only within the United States and only after the initial transporter had dropped the aliens off inside the country? Precisely. I agree. And had the initial transporter left them at that point? Well, Your Honor, Cites do, and I agree with the language saying dropped off within the United States, but then Your Honor's question is, the specific question is, did he continue? And that's a different point. And I think that the Ninth Circuit, the Ninth Circuit as well as Congress, recognizes there are separate offenses. There's a brings to offense and there's a transport within the United States offense. And so recognizing that, Your Honor's question is, the fact that the guy continues with the aliens, does that make a difference? And I don't think it does. But in Lopez, weren't the facts different? Didn't the guy drop the aliens off and was no longer with them in Lopez? That's true. That's true. And I don't think, I don't think this distinction, this factual distinction that the guy may have continued with the aliens here in this case, makes any difference as to, as to whether Mr. Sedano in this case, if he did anything other than transport within the United States. That's what he did. That's what he was convicted of. And I don't ask that those convictions be reversed. Congress made a distinction. And this Court recognized that distinction. And I think the same should apply in the same controls in this case. So I respectfully ask that those convictions be reversed. Well, just so that I can understand, if there's a, if the parties, if there's an agreement in the United States that one person is going to go over and get the aliens, bring them across, and that there will, and that the person in the United States will arrange, get the drop off, the drop house, make it available, meet them there, and arrange for transportation from that point. That is still within the United States? This is true, and there's not. Aiding and abetting? That's not aiding and abetting, and here's why. The Court, this Court recently, and I provided a 28-J to this Court, and that's United States v. Hernandez-Oriana. That was decided August 20th, 2008. They described a scenario very similar to what Your Honor just described, which is ample evidence of a conspiracy of aliens, for smuggled aliens. Ledgers indicating the names of individuals being brought over, et cetera. Much more evidence than in this case. And in that case, the defendants picked up aliens near the border and brought them, transported them within the United States, and this Court, it stated, reversed the aiding and abetting convictions and stated that this is a proper conspiracy conviction. And so aiding and abetting, specifically aiding and abetting the bringing to of aliens was not sufficient in that case, and nor is it sufficient in this case. Was that a conviction for both aiding and abetting and conspiracy? I believe so. I believe so. Thank you, Your Honor. Yes. So is it your position that this bringing to is not or is a continuing offense? Bringing to is not a continuing offense. I realize the Ninth Circuit in Lopez left that question open, but it is the aiding and abetting of bringing to with the facts presented here, which is transporting within the United States, is not aiding and abetting the bringing to. Counsel, in the Hernandez case, was there a guide in Hernandez? I think the guide's name is a long opinion. Let me find it. We are unpersuaded by the fact that the defendant had twice spoken to a person who might have been the initial transporter after the aliens were dropped off. But there was no evidence identifying anyone specifically that led the aliens across the border, as we have in this case. That's the problem in this case. That's the problem the panel had, that there was no evidence linking the driver to anyone who guided the aliens across the border. Well, it seems that the Ninth Circuit writes in Hernandez-Oriano on page of the slip opinion, page 11166, it seems that there might have been evidence, because it states that the fact that the defendant had twice spoken to a person that might have been the initial transporter is so true. I mean, I don't see the name of it. That was the problem the panel had, if there was no definitive evidence of a guide. Well, respectfully, I mean, I think the evidence in that case was quite strong of an alien smuggler. Thank you. We'll give you a minute or so in rebuttal. Thank you. Thank you. Good morning, Your Honors. My name is Joseph Green. I represent the United States. I was also the attorney at trial in this case. Your Honors, in this case, the bringing to conviction was proper. The jury's verdict was correct, and the government would urge the court to affirm that conviction. I think the most important factor in this case is that when Mr. Sedano arrives to pick up the group at a location that's remote out of the border, the guide is still actively leading the group. And that was the critical bright-line test that this court set forth in United States v. Lopez. When Mr. Sedano gets there, there was testimony from all three of the aliens who were smuggled that day that the guide directed into Mr. Sedano's vehicle, that he got into the vehicle, and that he proceeded with them. But one of the smuggled aliens saw the guide exit the vehicle after Mr. Sedano bailed out of the vehicle and attempted to flee from Border Patrol. So as a result, under Lopez, if you look at the very clear test, the offense was continuing, and Mr. Sedano aided him. And I would note that the jury was instructed of this very clearly about what the test was. So the court can feel confident about the jury's verdict because the jury was instructed that the crime is not completed until the initial transporter, who brings the aliens to the United States, terminates his acts of transportation and drops off the aliens at a location in the country. That's in the excerpts of the Record 31. I just have a couple of comments. I'd like to just comment on some of the argument, and then I'm prepared to submit it. I would note that in this case, you really don't have the mere act of transportation, and that's been a theme of Mr. Sedano's appeal. You have much more because he didn't merely pick them up at a certain location and drive them to another location. He was a part of a concerted effort, together with the guide, to make sure that this group successfully entered the United States. Hernandez, I think that this, Mr. Kejain talked a little bit about that case. The most important thing in Hernandez that distinguishes it is that the two defendants in that case had no direct connection to the aliens named in the indictment. So that was the reason, as I read Hernandez, that the government's case was wanting there. Here, there's no dispute. Mr. Sedano picked up the named aliens, and that was uncontested at trial. Unless Your Honors have any questions, I am prepared to submit it. But would you just tell me once more the difference, how you distinguish Hernandez? Sure. I'd be glad to. The key distinction between Mr. Sedano's case and Hernandez is that there was no direct evidence linking the two defendants in Hernandez to the aliens that were named in the indictment. There was a lot of evidence in the Hernandez case that those two were involved generally in alien smuggling. They had contacts with people in Mexico who would organize loads of aliens to be crossed. There were ledgers that specifically identified other aliens who they had helped smuggle into the United States. But where the evidence was wanting was the link between the two defendants in Hernandez and the specific aliens who were alleged in the indictment that they had aided and abetted across the board. In Hernandez, I think the result would have been different if, for example, there was a ledger entry that identified the particular aliens that crossed. Well, here we don't have that defect because there's really no dispute that Mr. Sedano was aiding, transporting, bringing in these particular aliens. Because he was driving up and down between the border. He was driving up and down before, but then the border patrol caught him red-handed. So the aliens had just exited his vehicle. There wasn't any dispute between the connection of those. There's just a dispute about what the right conviction was. And the language in the portion of Hernandez that we looked at specifically, which page are you? You know, I had cited in my 20HA letter the Westlaw citation, which was at star 10. And I have in my hands the slip opinion. So it might take me a moment to find it, Your Honor. Here, it's at 11167, towards the bottom. The evidence presented to the jury stops short of linking those aliens, that is, the aliens named in the bringing-to accounts, to Drury and Hernandez, that would support their liability for conduct that occurred before the bringing-to offense terminated. Had note 16? Yeah. Had note 16. That's right. Okay. Thank you. Thank you very much. Are there any further questions? No. Thank you. Thank you. Just briefly, I would say that to stand on the fact that the guy continued with the aliens, I think perpetuates the immediate destination or ultimate destination test that this court has rejected en banc. Counsel, how do you respond to opposing counsel's observation that the jury was specifically instructed as to what it had to find in terms of the involvement of the guide, and their verdict of guilty represented the fact that they found that the transportation had continued by the guide? What's your response to that? This appeal was taken, number one, as a Rule 29 and continued after the government's case in chief had closed. And so it's as a matter of, I would say that the evidence was insufficient to support that verdict and the jury's reading of it, and secondly, to discuss this notion of transportation continuing seems to also be a legal notion, makes conclude, a legal notion that the court should also observe de novo, should review de novo. Thank you. Thank you. The court appreciates the arguments in the matter just presented. The case is submitted for decision. The next case for argument is the United States v. Reynolds.
judges: Schroeder, Rawlinson, Sandoval